**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000602
21-FEB-2020
07:47 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

ADELINE N. PORTER, Claimant-Appellant,
v.
THE QUEEN'S MEDICAL CENTER, Employer-Appellee, Self-Insured

NO. CAAP-16-0000602

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB2012-438 (2-02-15470, 2-02-14444, 2-02-14445,
2-02-15471, 2-10-07337))

FEBRUARY 21, 2020

GINOZA, CHIEF JUDGE, LEONARD and CHAN, JJ.

OPINION OF THE COURT BY CHAN, J.

Claimant-Appellant Adeline N. Porter (Porter), self-represented, appeals from the Decision and Order entered by the Labor and Industrial Relations Appeals Board (LIRAB) on August 10, 2016 in Case No. AB 2012-438 (August 10, 2016 D&O).[1]

---

[1] We note that the August 10, 2016 D&O attached as an exhibit to Porter's Notice of Appeal is an incomplete copy as it omits the first thirty-six pages of the order, including the caption identifying the order. This omission renders Porter's Notice of Appeal noncompliant with Rule 3(c)(2) of the Hawai'i Rules of Appellate Procedure (HRAP) governing the required content of a notice of appeal. Nevertheless, because: (1) "a mistake in designating the judgment should

The August 10, 2016 D&O addressed whether Porter's requests to reopen her workers' compensation case for alleged Multiple Chemical Sensitivity (MCS) related injuries occurring in 2002 and 2003 met the requirements set forth in Hawaii Revised Statutes (HRS) § 386-89(c) (2015),[2] as remanded to the LIRAB by this court in Porter v. Queens Med. Ctr., No. CAAP-13-0006215, 2015 WL 1400787 (Haw. App. Mar. 27, 2015) (mem. op.) (Porter I).

---

not result in loss of the appeal as long as the intention to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake," Ek v. Boggs, 102 Hawaiʻi 289, 294, 75 P.3d 1180, 1185 (2003) (internal quotation marks, citations, and ellipses omitted); (2) Porter identified the August 10, 2016 D&O in her Notice of Appeal and has appended a complete copy of the August 10, 2016 D&O to her Opening Brief; and (3) Employer-Appellee Queens Medical Center (QMC) does not assert that it has been misled; we may review the merits of Porter's arguments.

[2]      HRS § 386-89 provides, in relevant part:

§386-89 Reopening of cases; continuing jurisdiction of director.

.   .   .   .

(c) On the application of any party in interest, supported by a showing of substantial evidence, on the ground of a change in or of a mistake in a determination of fact related to the physical condition of the injured employee, the director may, at any time prior to eight years after date of the last payment of compensation, whether or not a decision awarding compensation has been issued, or at any time prior to eight years after the rejection of a claim, review a compensation case and issue a decision which may award, terminate, continue, reinstate, increase, or decrease compensation. No compensation case may be reviewed oftener than once in six months and no case in which a claim has been rejected shall be reviewed more than once if on such review the claim is again rejected. The decision shall not affect any compensation previously paid, except that an increase of the compensation may be made effective from the date of the injury, and if any part of the compensation due or to become due is unpaid, a decrease of the compensation may be made effective from the date of the injury, and any payment made prior thereto in excess of such decreased compensation shall be deducted from any unpaid compensation in such manner and by such method as may be determined by the director. In the event any such decision increases the compensation in a case where the employee has received damages from a third party pursuant to section 386-8 in excess of compensation previously awarded, the amount of such excess shall constitute a pro tanto satisfaction of the amount of the additional compensation awarded. This subsection shall not apply when the employer's liability for compensation has been discharged in whole by the payment of a lump sum in accordance with section 386-54.

For the reasons set forth herein, we hold that Porter waived her fraud claims in Porter I, including her claim to reopen a workers' compensation claim relating to an alleged May 13, 2003 injury. We also hold that the LIRAB did not err in determining that Porter failed to make the requisite showing of substantial evidence required by HRS § 386-89(c) to obtain the relief sought for her August 9, 2002, August 31, 2002, November 6, 2002, and November 8, 2002 workers' compensation claims. Accordingly, we affirm the LIRAB's August 10, 2016 D&O.

## I. Background

### A. The LIRAB's denial of Porter's claims prior to her first appeal

Porter asserted workers' compensation claims for alleged MCS injuries that occurred on August 9, 2002, August 31, 2002, November 6, 2002, and November 8, 2002 (collectively, 2002 Claims). Porter also filed a claim for an additional alleged MCS injury that occurred on May 13, 2003 (2003 Claim). The Department of Labor and Industrial Relations, Disability Compensation Division (DCD) denied compensation for Porter's 2002 Claims and 2003 Claim. The LIRAB issued a decision on July 19, 2005, affirming the DCD's denial of compensation for the 2002 Claims (July 19, 2005 D&O). Porter then requested that the DCD reopen her 2002 Claims and 2003 Claim, which the DCD denied in its November 28, 2012 Decision (November 28, 2012 DCD Decision).

In a September 17, 2013 Decision and Order (September 17, 2013 D&O), the LIRAB affirmed in part the November 28, 2012 DCD Decision, holding that Porter was not entitled to reopen her 2002 Claims and 2003 Claim because they were administratively final, since she had not appealed the LIRAB's July 19, 2005 D&O affirming the DCD's denial of compensation for her 2002 Claims, nor had she appealed the DCD's March 10, 2011 Decision denying compensation for her 2003 Claim (March 10, 2011 DCD Decision). The LIRAB further held that Porter's filing of allegations of fraud on March 24, 2011, for

incidences prior to March 24, 2009, were time-barred by HRS §
386-98(f) (Supp. 2014).[3] Additionally, the LIRAB stated that the
time-barred allegations of fraud would not warrant reopening of
her 2002 Claims or 2003 Claim because the DCD did not exercise
its discretion to pursue the fraud claims on its own. However,
in concluding its September 17, 2013 D&O, the LIRAB held that
Porter's remaining allegation of fraud in her March 24, 2011
complaint, relating to whether, by an October 1, 2010 letter, QMC
committed fraud for any of Porter's 2002 Claims or 2003 Claim,
was still left to be addressed by the LIRAB on appeal.

On September 30, 2013, Porter filed a "Request for
Reconsideration or Appeal" (Motion for Reconsideration) from the
September 17, 2013 D&O. The LIRAB issued its December 3, 2013
Order, denying the Motion for Reconsideration.

In a separate December 3, 2013 Decision and Order
(December 3, 2013 D&O), the LIRAB determined the outstanding
issue of whether QMC's October 1, 2010 letter amounted to fraud
which would warrant the reopening of Porter's 2002 Claims or 2003
Claim. Ultimately, the LIRAB concluded that the October 1, 2010
letter did not constitute fraud and affirmed the November 28,
2012 DCD Decision denying Porter's request to reopen her 2002
Claims and 2003 Claim. Porter subsequently appealed to this
court from the LIRAB's September 17, 2013 D&O, December 3, 2013
Order, and December 3, 2013 D&O.

B.    **Porter I**

In Porter I, this court noted that, as best as could be
determined, Porter relied on the fraud provision of HRS § 386-
89(b) (1993)[4] to support reopening her 2003 Claim. 2015 WL

---

    [3]    HRS § 386-98(f) provides, in relevant part, that "[w]ith respect to
the administrative penalties set forth in subsection (e), no penalty shall be
imposed except upon consideration of a written complaint that specifically
alleges a violation of this section occurring within two years of the date of
said complaint."

    [4]    HRS § 386-89(b) provides that, "[t]he director may at any time,
either of the director's own motion or upon the application of any party, reopen
any case on the ground that fraud has been practiced on the director or on any

4

1400787, at *2 n.5, *7 n.9, *8. We further determined that Porter's failure to include fraud arguments in her Opening Brief amounted to a waiver of the fraud claims for both her 2002 Claims and 2003 Claim. Id. at *7, *7 n.9. Therefore, we limited our review to Porter's contention that the LIRAB erred in denying her request to reopen her 2002 Claims without first addressing whether she satisfied the requirements of HRS § 386-89(c) (1993).[5] Upon review, we determined that, contrary to the LIRAB's holding in the September 17, 2013 D&O, an appeal of the July 19, 2005 D&O was not necessary to reopen Porter's 2002 Claims under HRS § 386-89(c). Id. at *7. As a result, we concluded that the LIRAB erred in its September 17, 2013 D&O when it affirmed the DCD's denial of Porter's 2002 Claims without first addressing whether Porter's request to reopen satisfied the requirements of HRS § 386-89(c). Id.

Accordingly, we affirmed the December 3, 2013 D&O based on our conclusion that Porter had waived her fraud claims. Id. at *7-8. We also vacated the December 3, 2013 Order and September 17, 2013 D&O, as they pertained to Porter's request to reopen her 2002 Claims under HRS § 386-89(c), and remanded the case to the LIRAB to determine whether Porter's request to reopen her 2002 Claims satisfied the requirements of HRS § 386-89(c). Id. at *8.

C.   The LIRAB's August 10, 2016 D&O

On remand, Porter and QMC stipulated to forgo trial on the remanded issue and proceeded by the submission of post-trial memoranda. After reviewing the parties' submissions, the LIRAB made numerous findings of fact (FOFs) and conclusions of law (COLs) and issued its August 10, 2016 D&O, wherein the LIRAB affirmed the November 28, 2012 DCD Decision, as it related to the

---

party and render such decision as is proper under the circumstances."

[5]      HRS § 386-89(c) (1993) contains language identical to HRS § 386-89(c) (2015), recited *supra*.

denial of Porter's requests to reopen her claims. In COL 1, the LIRAB concluded that Porter was not entitled to reopen her 2002 Claims because she had not presented substantial evidence of a change or mistake relating to her condition under HRS § 386-89(c). More specifically, under COL 1(a), the LIRAB held that "the applicant has the burden of proof to justify a reopening under Section 386-89(c), HRS" and that the presumption of compensability in HRS § 386-85(1) (2015)[6] applies to the question of compensability once a case is reopened, but not to the determination of an applicant's entitlement to reopening or review under HRS § 386-89(c). The LIRAB then held in COL 1(b) that Porter had not alleged a change relating to her physical condition, nor had she presented substantial evidence to support her request for reopening of her 2002 Claims based on a change relating to her physical conditions. The LIRAB further held in COL 1(c) that since it did not credit the various documents Porter offered in support of her claim that MCS was, is, or had become, a valid medical disorder, Porter had not presented substantial evidence to support her request to reopen her 2002 claims based on a mistake of fact at the time of the July 19, 2005 D&O. Finally, in COL 2, the LIRAB concluded that Porter's 2003 Claim was time-barred, and in COL 3, the LIRAB concluded that Porter's fraud claims could not be addressed because the LIRAB previously denied the allegations of fraud and this court deemed Porter's fraud claims waived in <u>Porter I</u>.

Porter timely appealed the August 10, 2016 D&O to this court on August 30, 2016.

## II. Points of Error

On appeal, Porter contends that the LIRAB erred in its August 10, 2016 D&O by: (1) denying Porter's requests to reopen

---

[6] HRS § 386-85(1) provides: "In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary: (1) That the claim is for a covered work injury[.]"

her 2002 Claims under HRS § 386-89(c); (2) declining to re-address Porter's fraud allegations; and (3) denying Porter's request to reopen her 2003 Claim on the grounds that it was time-barred. Porter challenges FOFs 41, 46, 50, 53-80, and 85, and COLs 1-3.[7]

## III. Standard of Review

Appellate review of a LIRAB decision is governed by HRS § 91-14(g). Igawa v. Koa House Rest., 97 Hawai'i 402, 405-06, 38 P.3d 570, 573-74 (2001). HRS § 91-14(g) (Supp. 2018) provides:

§91-14 Judicial review of contested cases.

. . . .

(g) Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the

---

[7] We note that Porter's Opening Brief fails to include appropriate record references as required by HRAP Rule 28(b)(3). Instead of citing to the record on appeal, Porter cites to exhibits appended to her Opening Brief, without citing to specific pages. As discussed *infra*, there is at least one document appended to Porter's Opening Brief in violation of HRAP 28(b)(10) because it does not appear in the record on appeal. Additionally, despite there being sections titled "Standard of Review" within Porter's Opening Brief, the sections, except for those pertaining to COLs 1-3, do not contain standards for the court to apply to review the issues on appeal. This is in nonconformance with HRAP 28(b)(5). However, Porter does make some references to standards in her "Argument" sections.

> HRAP Rule 30 provides in pertinent part that "when the brief of an appellant is otherwise not in conformity with these rules, the appeal *may* be dismissed or the brief stricken and monetary or other sanctions may be levied by the appellate court," giving an appellate court "discretion" to determine the proper course of action[.]

Kanahele v. Han, 125 Hawai'i 446, 455, 263 P.3d 726, 735 (2011) (emphasis in original) (some internal brackets, parenthetical, and citation omitted). Nevertheless,

> noncompliance with Rule 28 does not always result in dismissal of the claims, and [the supreme court] has consistently adhered to the policy of affording litigants the opportunity to have their cases heard on the merits, where possible. This is particularly so where the remaining sections of the brief provide the necessary information to identify the party's argument.

Marvin v. Pflueger, 127 Hawai'i 490, 496, 280 P.3d 88, 94 (2012) (internal quotation marks, ellipses, and citation omitted). Based on the foregoing and the fact that QMC was able to provide this court with a thorough response on the merits despite the deficiencies in Porter's Opening Brief, we address Porter's arguments on the merits.

7

petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

>    (1)    In violation of constitutional or statutory provisions;
>
>    (2)    In excess of the statutory authority or jurisdiction of the agency;
>
>    (3)    Made upon unlawful procedure;
>
>    (4)    Affected by other error of law;
>
>    (5)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
>    (6)    Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Under HRS § 91-14(g),

>    COLs are reviewed *de novo*, pursuant to subsections (1), (2) and (4); questions regarding procedural defects are reviewable under subsection (3); FOFs are reviewable under the clearly erroneous standard, pursuant to subsection (5); and an agency's exercise of discretion is reviewed under the arbitrary and capricious standard, pursuant to subsection (6).

Pilaa 400, LLC v. Bd. of Land & Nat. Res., 132 Hawai'i 247, 263, 320 P.3d 912, 928 (2014) (citation and brackets omitted). We review COLs that present mixed questions of fact and law "under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case." Igawa, 97 Hawai'i at 406, 38 P.3d at 574 (quoting In re Water Use Permit Applications, 94 Hawai'i 97, 119, 9 P.3d 409, 431 (2000)); see Waltrip v. TS Enterprises, Inc., 140 Hawai'i 226, 235, 398 P.3d 815, 824 (2016) ("An FOF or a mixed determination of law and fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made. We have defined 'substantial evidence' as credible evidence which is of sufficient quality and probative value to enable a person of

reasonable caution to support a conclusion." (quoting In re Water Use Permit Applications, 94 Hawaiʻi at 119, 9 P.3d at 431)).

IV. Discussion

A. The statutory presumption of compensability under HRS § 386-85(1) does not apply to Porter's request to reopen where the issue is not whether the injury is related to a work accident and the LIRAB majority properly considered whether Porter made the requisite showing of substantial evidence under HRS § 386-89(c) in declining Porter's requested relief.

In the August 10, 2016 D&O, there is a majority opinion and an opinion dissenting in part/concurring in part. A primary area of disagreement between these opinions is whether the presumption of compensability set forth in HRS § 386-85(1) applies to Porter's request to reopen her worker's compensation cases under HRS § 386-89(c). Both the majority opinion and dissenting/concurring opinion analyzed case law related to the issue, in particular Mitchell v. BWK Joint Venture, 57 Haw. 535, 560 P.2d 1292 (1977) and De Victoria v. H and K Contractors, 56 Haw. 552, 545 P.2d 692 (1976). Based on COL 1(a), recited infra, the LIRAB majority opinion seems to make two rulings. First, regarding an application to reopen a case under HRS § 386-89(c), the HRS § 386-85(1) presumption applies to whether an injury is work-connected. Second, any presumption applies only after a claimant meets the threshold burden to reopen the case. To the contrary, the LIRAB concurring/dissenting opinion contends that the LIRAB majority opinion misconstrues De Victoria and Mitchell, and instead concludes that the presumption under HRS § 386-85(1) applies to Porter's "reopening applications[.]"

On appeal, Porter generally asserts that the LIRAB majority erred in COL 1 when it "conclude[d] that [Porter] is not entitled to relief of reopening pursuant to [HRS §] 386-89(c) for her 2002 claims because she has not presented substantial evidence of a change or mistake relating to her physical condition." Porter also contends, more specifically, that the

LIRAB majority erred in COL 1 by, *inter alia*, not applying the HRS § 386-85(1) presumption of compensability to her request to reopen her 2002 Claims under HRS § 386-89(c).

The primary issue was whether Porter sustained an injury, i.e., MCS, not whether an injury is work-related. Given these circumstances, we conclude, for the reasons discussed *infra*, that the presumption under HRS § 386-85(1) does not apply in determining whether Porter is entitled to relief under HRS § 386-89(c). However, to the extent that the LIRAB majority held that Porter was required to show substantial evidence to have her case <u>reopened or reviewed</u>, we believe this was error because the Hawai'i Supreme Court has interpreted HRS § 386-89(c) to require the showing of substantial evidence in order to <u>obtain the relief sought</u>, not for reopening or review of the claim for compensation. <u>See</u> <u>Mitchell</u>, 57 Haw. 535, 560 P.2d 1292; <u>De Victoria</u>, 56 Haw. 552, 545 P.2d 692.

HRS § 386-89(c) provides, in relevant part:

> **§386-89 Reopening of cases; continuing jurisdiction of director.**
>
> .    .    .    .
>
> (c) On the application of any party in interest, <u>supported by a showing of substantial evidence, on the ground of a change in or of a mistake in a determination of fact related to the physical condition of the injured employee, the director may</u>, at any time prior to eight years after date of the last payment of compensation, whether or not a decision awarding compensation has been issued, or at any time prior to eight years after the rejection of a claim, <u>review a compensation case and issue a decision which may award, terminate, continue, reinstate, increase, or decrease compensation</u>. No compensation case may be reviewed oftener than once in six months and no case in which a claim has been rejected shall be reviewed more than once if on such review the claim is again rejected.

(Emphases added.) In turn, HRS § 386-85(1) provides:

> **§386-85 Presumptions.** In any proceeding for the enforcement of a claim for compensation under this chapter <u>it shall be presumed, in the absence of substantial evidence to the contrary</u>:
>
> (1) <u>That the claim is for a covered work injury</u>[.]

(Emphasis added.)

10

In <u>De Victoria</u>, it was undisputed that the claimant suffered an acute lumbo-sacral strain as a result of a 1966 work injury and he received worker's compensation benefits until July 1967. 56 Haw. at 553, 545 P.2d at 695. In 1972, the claimant sought additional benefits by requesting review under HRS § 386-89(c). <u>Id.</u> at 554, 545 P.2d at 695. The LIRAB concluded that "[t]he present condition of Claimant's back is unrelated" to his 1966 work injury, and that a knee injury first reported in 1970 was not related to his work injury. <u>Id.</u> at 555-56, 545 P.2d at 696.

On appeal, however, the Hawai'i Supreme Court reversed the LIRAB's ruling regarding the claimant's back. In part I of its opinion, the supreme court first expressed the following:

> In support of the decision of the Board, the employer's threshold position on appeal is that the claimant did not initially present a showing of substantial evidence in support of his application, allegedly required prior to obtaining a review by HRS § 386-89(c). <u>We do not believe that a showing of substantial evidence is necessary as a prerequisite to a **review** by the Director or the Board of an application under subparagraph (c) of HRS § 386-89</u>. That subparagraph requires that the applicant for a review must show by <u>substantial evidence</u> "a change in or . . . a mistake in a determination of fact related to the physical condition of the" claimant **only to justify favorable consideration of the application**.

<u>Id.</u> at 556, 545 P.2d at 696 (emphases added). Then, in addressing whether there was "substantial evidence upon which [the LIRAB] could favorably consider claimant's application with respect to his back injury", <u>id.</u>, the supreme court held that the record did not support the LIRAB's finding that within a year of the accident the claimant's back condition had returned to pre-accident condition. <u>Id.</u> at 559, 545 P.2d at 698. In part III of its opinion, the supreme court further ruled:

> Moreover, our holding that the Board's conclusion that claimant's present back condition is not related to his 1966 work injury is clearly erroneous is heightened when we accord <u>proper emphasis to the statutory presumption of HRS § 386-85(1) which we believe to be applicable</u>. . . . [B]ased upon the record, <u>there is no question that claimant is now partially disabled</u>. Claimant's evidence was that this condition is due to the accident of July 1966, while the employer offered only speculative argument to the contrary.

11

> In addition, HRS § 386-85(1) provides that it is "presumed, in the absence of substantial evidence to the contrary . . . [t]hat the claim is for a covered work injury[]".
>
> . . . .
>
> We hold that a proceeding brought by a claimant under HRS § 386-89(c) is plainly a "proceeding for the enforcement of a claim for compensation under [our workmen's compensation] chapter." HRS § 386-85. <u>Where, as here, the primary issue is whether or not an injury is related to a work accident, a claimant is entitled to the same presumption on review of a case once closed that his claim is for a covered injury as that in an original hearing.</u>

<u>Id.</u> at 560-62, 545 P.2d at 699 (emphases added).[8]

One year after deciding <u>De Victoria</u>, the Hawai'i Supreme Court issued its opinion in <u>Mitchell</u>. There was no dispute that the claimant in <u>Mitchell</u> was injured in an accident in January 1970, when he was "struck in the lower abdomen and pubic region by heavy boiler tubes weighing between 1200 pounds to 1500 pounds," and he was awarded certain worker's compensation benefits in an initial decision which was not appealed. 57 Haw. at 537, 560 P.2d at 1294. Subsequently, the LIRAB issued a decision under HRS § 386-89(c) that the claimant had developed a scrotal hydrocele which was causally related to the 1970 accident and awarded additional benefits. <u>Id.</u> at 539, 560 P.2d at 1295. The employer and insurer appealed from this LIRAB decision.

On appeal, the Hawai'i Supreme Court noted with regard to HRS § 386-89(c) (Supp. 1975):

> The provisions of this section authorize the director to review a compensation case at any time within a period of ten years[9] after the last payment of compensation or the rejection of a claim, upon the application of a claimant because of a change in or a mistake in a determination of fact relating to the physical condition of the injured employee. <u>Before the director may grant the relief requested by the injured employee under HRS § 386-89(c)</u> (1975 Supp.), <u>there must be a showing by **substantial evidence**</u> of such a change in or mistake in a determination

---

[8]    Justice Kobayashi concurred with the majority, except with respect to part III of the opinion. 56 Haw. at 563, 545 P.2d at 700.

[9]    The applicable version of HRS § 386-89(c) in <u>Mitchell</u> provided that a review could be done within ten years of the triggering events. In 1985, HRS § 386-89(c) was amended to provide for an eight year period. <u>See</u> 1985 Haw. Sess. Laws Act 296, § 9 at 645-46.

of fact relating to his physical condition.

Id. at 544, 560 P.2d at 1298 (emphases added). The supreme court held that the LIRAB did not err in reopening the claimant's case. Id. at 546, 560 P.2d at 1298. Further, with regard to the appellants' challenge to the LIRAB's conclusion that the claimant's hydrocele was causally related to the 1970 work accident, the supreme court reiterated its holding in De Victoria that

> a proceeding brought by a claimant under HRS § 386-89(c) is plainly a "proceeding for the enforcement of a claim for compensation under [our workmen's compensation] chapter." HRS § 386-85. Where, as here, the primary issue is whether or not an injury is related to a work accident, a claimant is entitled to the same presumption on review of a case once closed that his claim is for a covered injury as that in an original hearing.

Id. at 546, 560 P.2d at 1299 (emphasis added) (citation and some internal quotation marks omitted); see also Korsak v. Hawaii Permanente Medical Group, Inc., 94 Hawaiʻi 297, 306, 12 P.3d 1238, 1247 (2000) (noting that the presumption under HRS § 386-85(1) "applies to the 'work-relatedness' of an injury"). The supreme court thus concluded that as to the LIRAB's findings, including that there was a causal relation between the claimant's scrotal hydrocele and his work accident:

> We think that these findings are reasonably clear, especially in light of the presumption that "the claim is for a covered work injury" in the absence of substantial evidence to the contrary. There is substantial evidence in the record to sustain the findings when we consider the presumption in HRS § 386-85.

Mitchell, 57 Haw. at 548, 560 P.2d at 1300.

In light of the opinions in De Victoria and Mitchell: (1) a party must make the requisite showing of substantial evidence under HRS § 386-89(c) in order to obtain the relief requested, not for the Director or the LIRAB to reopen or review the case; and (2) the presumption under HRS § 386-85(1) applies to a review of a case under HRS § 386-89(c) when "the primary issue is whether or not an injury is related to a work accident[.]" Mitchell, 57 Haw. at 546, 560 P.2d at 1299; De

13

<u>Victoria</u>, 56 Haw. at 562, 545 P.2d at 699; <u>accord</u> <u>Smith v.</u>
<u>Kanemoto</u>, No. CAAP-10-0000200, 2013 WL 6150720 (Haw. App.
Nov. 22, 2013) (SDO) (stating that the presumption under HRS §
386-85(1) applies only to determine the work-relatedness of an
injury, while the substantial evidence required under HRS § 386-
89(c) applies to a determination of whether there has been a
change in or a mistake made in relation to the claimant's
physical condition).

   Here, in a letter dated July 30, 2010, Porter requested
that her cases be reopened pursuant to HRS § 386-89(c) because
"[t]here was obviously a mistake in the determination of fact
previously which precluded [Porter] from pursuing her claim,
i.e., that MCS was not a physical condition which was recognized
as an injury."[10]  By way of her July 30, 2010 letter, Porter thus
stated the grounds upon which her application to reopen was
based.[11]  Therefore, Porter complied with the procedure for an
application to reopen a workers' compensation case in HAR § 12-
10-63 (eff. 1981).[12]

---

[10]  In the attached Form WC-5, Porter describes her injury as follows:

> Following inhalation of fumes, experienced chest tightness,
> shortness of breath, cough, wheezing, dizziness.  8/9/02 CXR –
> "Bibasilar hazy opacities, which may represent atelectasis vs.
> early infiltrates".  8/31/03 EKG-Abnormal . . . "sinus tach
> non-specific ST & T wave abnormality consider inferior
> ischemia".

[11]  With regard to documenting a request to reopen a claim under HRS
§ 386-89(c), Hawaii Administrative Rules (HAR) § 12-10-30(d) (eff. 1994)
provides:

> §12-10-30 Documentation of claims.
>
>  . . . .
>
>   (d) Any request for reopening of any claim pursuant to
> section 386-89(c), HRS, shall be accompanied by medical
> information or any other substantial evidence showing a change
> in or of a mistake in a determination of fact related to the
> physical condition of the injured employee.

[12]  HAR § 12-10-63 sets forth the procedure for an application to reopen
a workers' compensation case, stating:

> §12-10-63 Application for reopening of cases.  (a) An

On remand after this court's decision in Porter I, the LIRAB issued its August 10, 2016 D&O addressing whether Porter's request to reopen satisfied the requirements of HRS § 386-89(c). In COL 1, the LIRAB majority generally held that "[Porter] is not entitled to relief of reopening pursuant to [HRS §] 386-89(c) for her 2002 claims because she has not presented substantial evidence of a change or mistake relating to her physical condition."[13] In COL 1(a), the LIRAB majority concluded:

> In both [D]e Victoria and Mitchell, the presumption applied to the work-connectedness of the claimants' injuries, not the entitlement to reopening or review, which the Board does not reach in this case.

> Consistent with the statute and case law, as well as the ICA's specific instruction in this case, the presumption of compensability applies to the question of compensability once a case is reopened. There is no presumption that applies before a case is reopened or reviewed.

> Therefore, when faced with the issue of whether a prior determination should be reopened for further review, the foregoing dictates that the threshold question is whether Claimant met her burden of proof.

> The Board determines that there is no presumption that Claimant is entitled to reopening, and that Claimant must prove, by substantial evidence, that there has been a change in or a mistake in a determination of fact related to her physical condition.

To the extent that the LIRAB majority stated in COL 1 that Porter was required to put forth substantial evidence of a change or mistake relating to her physical condition to justify reopening or review under HRS § 386-89(c), we conclude that this was error because the requisite showing of substantial evidence is for the LIRAB to grant the relief requested and not as a

_____

> application for reopening of a case pursuant to section 386-89, HRS, shall be in writing, shall state specifically the grounds upon which the application is based, and shall be served upon each party at the time of filing with the director.

> (b) Whenever an application for reopening of a case is made, the director shall review the case file and may, by discretion, hear the interested parties. The director shall deny or grant a reopening and notify the parties in writing.

[13] The LIRAB majority also uses substantially similar language in COL 1(b) and 1(c).

prerequisite to reopen or review the case. See Mitchell, 57 Haw. at 546, 560 P.2d at 1299; De Victoria, 56 Haw. at 562, 545 P.2d at 699. Despite the misstatements of law, the record[14] reflects that the LIRAB did in fact reopen and review Porter's case, and that the LIRAB's consideration of whether Porter made the requisite showing of substantial evidence under HRS § 386-89(c) was actually a determination regarding whether to grant Porter's requested relief for her 2002 Claims. Accordingly, the misstatements of the law were harmless error. See Survivors of Medeiros v. Maui Land & Pineapple Co., 66 Haw. 290, 293, 660 P.2d 1316, 1319 (1983) ("HRS § 91-14(g) of the Administrative Procedures Act . . . precludes judicial reversal or modification of an administrative decision even where affected by error of law . . . unless substantial rights of the petitioner may have been prejudiced.").

As to the applicability of the HRS § 386-85(1) presumption to an application for reopening under HRS § 386-89(c), this case presents circumstances distinguishable from those in De Victoria and Mitchell, because the primary issue here was whether Porter sustained her claimed injury, not whether her claimed injury was related to a work accident. Given these circumstances, the presumption under HRS § 386-85(1) does not apply and it was proper for the LIRAB majority to consider whether Porter made the requisite showing of substantial evidence under HRS § 386-89(c) to warrant the granting of relief for her 2002 Claims.

---

[14] The August 10, 2016 D&O, specifically FOFs 1-40, which are unchallenged on appeal, indicate that the LIRAB reopened Porter's case and reviewed the "entirety of the records on appeal in all of [Porter's] cases on appeal." See Bremer v. Weeks, 104 Hawai‘i 43, 63, 85 P.3d 150, 170 (2004) (stating that findings of fact that are not challenged on appeal are binding on the appellate court). Further, although Porter challenges the LIRAB's evaluation and analyses of the evidence and arguments presented by the parties, the remainder of the August 10, 2016 D&O shows that the LIRAB had in fact reopened Porter's case and reviewed the submissions of the parties to determine whether relief would be granted for Porter's claims under HRS § 386-89(c).

B.    **The LIRAB did not err in denying Porter's request for relief for her 2002 Claims.**

As discussed *supra*, the LIRAB properly reviewed Porter's application under HRS § 386-89(c).  The LIRAB reviewed and considered the parties' respective memoranda and exhibits submitted.  Based on the parties' submissions, the LIRAB made numerous FOFs in the August 10, 2016 D&O upon which it based its denial of Porter's request for relief for her 2002 Claims.  On appeal, Porter challenges many of these FOFs.

Porter contends that FOF 50, which stated that "[b]y letter dated August 10, 2007, the former Administrator of the [DCD] informed [Porter] that MCS was 'NOT recognized as a compensable injury for all workers' compensation claims,'" was erroneous because it misrepresented the substance of the August 10, 2007 letter.  Porter points out that FOF 50 quotes only a portion of the August 10, 2007 letter, omitting the sentence that immediately followed the quoted portion, which stated "[w]orkers' compensation determinations are based upon whether a claimant suffered a workplace injury/illness, for an example, as a result of chemical exposure in the workplace." Despite the omission, FOF 50 is an accurate reflection of the quoted portion of the August 10, 2007 letter and is not clearly erroneous.  Pilaa 400, LLC, 132 Hawai'i at 263, 320 P.3d at 928; see Waltrip v. TS Enterprises, Inc., 140 Hawai'i 226, 235, 398 P.3d 815, 824 (2016).

Porter next contends that the LIRAB erred in its finding in FOF 46 that "[t]he November 6, 2006 SSA Notice of Award contains no statement or indication of the disabling condition underlying Claimant's SSA award."  In support of her contention, Porter maintains that her SSA Notice of Award contained a decision by an administrative law judge, which she appended to her Opening Brief, that states, "claimant's multiple chemical sensitivity is a 'severe' impairment, based upon the requirements in the Regulations. [20 CFR § 404.1520(c)]."  Based

on our review of the record, it appears that Porter did not produce the purported administrative law judge decision in the proceedings below and that she had only produced the first page of the SSA Notice of Award.[15] The first page of the SSA Notice of Award does not indicate a recognition of MCS as the basis for Porter's SSA Notice of Award. Further, the appellate courts will not consider matters not appearing in the record. State v. Moses, 102 Hawaiʻi 449, 455, 77 P.3d 940, 946 (2003) ("[Appellate courts] cannot consider evidence outside the record[.]"). Accordingly, this court cannot consider the purported administrative law judge decision or the portions of the SSA Notice of Award that were appended to Porter's Opening Brief, but not contained in the record on appeal. FOF 46 is thus not clearly erroneous. Pilaa 400, LLC, 132 Hawaiʻi at 263, 320 P.3d at 928; see Waltrip, 140 Hawaiʻi at 235, 398 P.3d at 824.

Porter challenges FOF 53, which found that the four documents, discussed *infra*, submitted by Porter "appear to have been obtained by [Porter] from online sources." Despite her assertion of an error, Porter fails to provide any discernable argument in support of her challenge, and we thus decline to address her contention. See Kakinami v. Kakinami, 127 Hawaiʻi 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012) (citing In re Guardianship of Carlsmith, 113 Hawaiʻi 236, 246, 151 P.3d 717, 727 (2007) (noting that this court may "disregard a particular contention if the appellant makes no discernible argument in support of that position") (internal quotation marks and brackets omitted)).

Porter asserts that the LIRAB erred in FOFs 54-80 by not crediting the four documents that she submitted in support of

---

[15] Porter attached what appears to be the first page of her SSA Notice of Award in the following filings at the administrative level: position statement for a September 27, 2012 hearing; Memorandum in Opposition to Motion for Summary Judgment for a September 12, 2013 hearing; position statement for September 18, 2013 trial (listed as exhibit, but previously filed); September 15, 2015 Post-Trial Memorandum.

her position that MCS is now a recognized medical diagnosis. Porter posits that the LIRAB's decision not to credit the documents was erroneous, biased, and collusive, based on the LIRAB's criticalness of the credentials of the documents' authors, QMC's failure to rebut the credibility of the documents, and the LIRAB's reliance on the opinions of Dr. Jetser, Dr. Morgan, and Dr. Johnson. The August 10, 2016 D&O reflects that the LIRAB declined to credit the four documents based on its finding that there was no reliable or credible evidence that the information contained in the documents were credible or that their authors were credible, and on the basis that the documents did not stand for the proposition that MCS was or is a recognized medical diagnosis or valid medical disorder.[16]

> It is well established that
>
> courts decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the agency's findings of fact by

---

[16] The LIRAB declined to credit Porter's document titled "The Heart of Toxicity: Details of Cardiovascular Damage Uncovered," by Bob Weinhold, on the grounds that there was no evidence of the author's education, training, skill, experience or other credentials, and that it did not propose that MCS was, is, or has become an accepted medical diagnosis or valid medical disorder.

The LIRAB declined to credit a document titled "A Statement for Healthcare Professionals From the Expert Panel on Population and Prevention Science of the American Heart Association," by Robert D. Brook, M.D., et al. The LIRAB found that: although the suffix attached to each of the authors' name indicated their degree of education, there was no evidence of their training, skill, experience or other credentials; the document submitted was incomplete; and the document does not propose that MCS was, is, or has become an accepted medical diagnosis or valid medical disorder.

The LIRAB declined to credit an internet blog titled "Research Shows Toxic Chemicals Initiate Multiple Chemical Sensitivity," by Susie Collins, which provided a comment on a paper by Martin Pall, Ph.D. The LIRAB found that: Porter did not present the paper by Dr. Pall, Ph.D; there was no evidence of Susie Collins' education, training, skill, experience, or other credentials; the blog does not propose that MCS was, is, or has become an accepted medical diagnosis or valid medical disorder; and the reliability of the information contained in the blog could not be determined by the LIRAB.

Lastly, the LIRAB declined to credit a document titled "Breakthrough Study on Multiple Chemical Sensitivity Shows MCS is an Epidemic Caused by Toxic Chemicals; Peer-Reviewed Paper is Published in Prestigious Toxicology Reference Work," on the grounds that it does not identify an author, publisher/publication, or publication date; the document does not propose that MCS was, is, or has become an accepted medical diagnosis or valid medical disorder; and the reliability of the information contained in the document could not be determined by the LIRAB.

> passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field.

Igawa, 97 Hawai'i at 410, 38 P.3d at 578 (quoting In re Application of Hawaiian Elec. Co., Inc., 81 Hawai'i 459, 465, 918 P.2d 561, 567 (1996)); see De Victoria, 56 Haw. at 558-59, 545 P.2d at 698 ("The issue of credibility is one within the primary responsibility of the Board as the fact finder whose determination will not be disturbed lightly.").

Initially, we find that contrary to Porter's assertion, there is no indication in the August 10, 2016 D&O that the LIRAB relied on the opinions of Dr. Jetser, Dr. Morgan, and/or Dr. Johnson in FOFs 54-80 or in their determination not to credit the four documents submitted by Porter.

In FOFs 54-56 and 58, the LIRAB found that the document titled "The Heart of Toxicity: Details of Cardiovascular Damage Uncovered," by Bob Weinhold: reported that researchers identified key components of heart function affected by air pollution, but noted that there were several limitations to the data and further research should be done; contained no evidence of Bob Weinhold's education, training, skill, experience or other credentials; does not propose that MCS was, is, or has become an accepted medical diagnosis or valid medical disorder; and even if the document were credited, it does not stand for the proposition that MCS was, is, or has become an accepted medical diagnosis or valid medical disorder. Based on our review of the document contained in the record, we conclude that the record sufficiently supports FOFs 54-56 and 58 and they are not clearly erroneous. Pilaa 400, LLC, 132 Hawai'i at 263, 320 P.3d at 928; see Waltrip, 140 Hawai'i at 235, 398 P.3d at 824.

FOFs 59-63 and 65 relate to a document titled "A Statement for Healthcare Professionals from the Expert Panel on Population and Prevention Science of the American Heart Association" by Robert D. Brook, M.D., et al. The LIRAB found that: the document is an undated "Scientific Statement" that

states "[e]pidemiological studies have demonstrated a consistent increased risk for cardiovascular events in relation to both short- and long-term exposure to present-day concentrations of ambient particulate matter"; while the suffix attached to each author's name indicates his or her educational degree, there is no evidence of their training, skill, experience or other credentials; the document was incomplete, as provided to the LIRAB; the document has a purpose of providing healthcare professionals and regulatory agencies with a comprehensive review of the literature on air pollution and cardiovascular disease, addressing implications of such findings in relation to public health and regulatory policies, and providing practical recommendations and suggestions for future research; the document does not propose that MCS was, is, or has become an accepted medical diagnosis or valid medical disorder; and even if the document were credited, it does not stand for the proposition that MCS was, is, or has become an accepted medical diagnosis or valid medical disorder. Based on our review of the document contained in the record, we find that FOFs 59, 61-63, and 65 are sufficiently supported by the record and are not clearly erroneous. However, we observe that the document submitted was incomplete only so far as it appears to be an abstract of the actual document named in the title. Further, contrary to the LIRAB's finding in FOF 60, the document did indicate "other credentials" of the authors, as the title intimates that the authors are members of the Expert Panel on Population and Prevention Science of the American Heart Association. Based on the preceding, we conclude that the portion of FOF 60 that found that "there is no evidence of [the authors'] . . . other credentials," is not supported by substantial evidence in the record and is clearly erroneous. Pilaa 400, LLC, 132 Hawai'i at 263, 320 P.3d at 928; see Waltrip, 140 Hawai'i at 235, 398 P.3d at 824. However, we conclude that this error is harmless and did not prejudice Porter's substantial rights in light of our

determination that the other FOFs pertaining to the document were not clearly erroneous. For the reasons discussed *infra*, we decline to disturb the LIRAB's decision not to credit this document in FOF 64. See Survivors of Medeiros, 66 Haw. at 293, 660 P.2d at 1319.

The two other documents presented by Porter are "Research Shows Toxic Chemicals Initiate Multiple Chemical Sensitivity" by Susie Collins dated July 18, 2009, and "Breakthrough Study on Multiple Chemical Sensitivity Shows MCS is an Epidemic Caused by Toxic Chemicals; Peer-Reviewed Paper is Published in Prestigious Toxicology Reference Work." Both documents appear to be reports on versions of a paper by Dr. Martin L. Pall entitled "Multiple Chemical Sensitivity: Toxicological and Sensitivity Mechanisms," which were to be published in or around 2009 and documented his research on MCS. In FOFs 66-69 and 71-72, relating to the document by Susie Collins dated July 18, 2009, the LIRAB found: the document provides comments on a paper by Martin Pall, Ph.D, but Dr. Pall's actual paper was not presented as evidence; there is no evidence of Susie Collins' education, training, skill, experience or other credentials; the document does not propose that MCS was, is, or has become an accepted medical diagnosis or valid medical disorder; the reliability of the information contained within the document cannot be determined; and even if the document were credited, it does not stand for the proposition that MCS was, is, or has become an accepted medical diagnosis or valid medical disorder, but rather, is only a suggestion by one person that the medical community should consider accepting MCS as a valid physiological diagnosis. In FOFs 73-76 and 78-79, relating to the document titled "Breakthrough Study on Multiple Chemical Sensitivity Shows MCS is an Epidemic Caused by Toxic Chemicals; Peer-Reviewed Paper is Published in Prestigious Toxicology Reference Work," the LIRAB found: the document does not identify an author, publisher/publication, or date; the document does not

propose that MCS was, is, or has become an accepted medical diagnosis or valid medical disorder, but rather, that it should be considered a valid physiological diagnosis; the reliability of the information contained within the document cannot be determined; and even if the document were credited, it does not stand for the proposition that MCS was, is, or has become an accepted medical diagnosis or valid medical disorder, but rather, is only a suggestion that the medical community should consider accepting MCS as a valid physiological diagnosis. Although the former document submitted by Porter contains an abstract purportedly taken from Dr. Pall's paper and the latter document purports to summarize the points made in Dr. Pall's paper, the actual paper does not appear in the record and the reliability/credibility of the publishers or author(s) is not established in the documents themselves or by other evidence in the record. Therefore, there is substantial evidence in the record that supports FOFs 69 and 76, that the LIRAB could not confirm the reliability of the documents' contents, and we are not left with a definite and firm conviction that a mistake has been made. Waltrip, 140 Hawai'i at 235, 398 P.3d at 824. Based on our review of the documents contained in the record, we also conclude that FOFs 66-68, 71-75, and 78-79 are sufficiently supported by the record. Pilaa 400, LLC, 132 Hawai'i at 263, 320 P.3d at 928; see Waltrip, 140 Hawai'i at 235, 398 P.3d at 824.

In FOF 80, the LIRAB found that "[t]here is no reliable or credible evidence that the foregoing documents were peer-reviewed or published in a peer-reviewed medical or scientific journal." Notwithstanding "The Heart of Toxicity: Details of Cardiovascular Damage Uncovered," by Bob Weinhold, stating that it was published in Environmental Health Perspectives on April 1, 2005; and "A Statement for Healthcare Professionals From the Expert Panel on Population and Prevention Science of the American Heart Association," by Robert D. Brook, M.D., et al., appearing to be an abstract for a statement published as an "AHA Scientific

Statement" by the American Heart Association's Expert Panel on Population and Prevention Science; neither the documents themselves nor other evidence in the record indicate that the documents were peer-reviewed or that the publications they were published in are peer-reviewed medical or scientific journals. FOF .80 is therefore supported by substantial evidence in the record and is not clearly erroneous. Pilaa 400, LLC, 132 Hawai'i at 263, 320 P.3d at 928; see Waltrip, 140 Hawai'i at 235, 398 P.3d at 824.

Based on our review of the four documents, as contained in the record, we find that FOFs 54-56, 58-63,[17] 65-69, 71-76, and 78-80 are sufficiently supported by the record and we are not left with a definite and firm conviction that mistakes have been made. Pilaa 400, LLC, 132 Hawai'i at 263, 320 P.3d at 928; See Waltrip, 140 Hawai'i at 235, 398 P.3d at 824. Insofar as FOFs 54-56, 58-63, 65-69, 71-76, and 78-80 are not clearly erroneous and it is within the LIRAB's province to determine credibility and what weight, if any, to assign the evidence, we decline to disturb the LIRAB's decisions not to credit the four documents in FOFs 57, 64, 70, and 77. See Igawa, 97 Hawai'i at 410, 38 P.3d at 578; De Victoria, 56 Haw. at 559, 545 P.2d at 698.

Porter advocates that the LIRAB erred in FOF 41 by finding that she had not alleged that her physical condition changed since the LIRAB denied her 2002 Claims for MCS or idiopathic environmental intolerance injuries in its July 19, 2005 D&O.[18] Porter only supports her argument by asserting that

---

[17] Excepting the portion of FOF 60 that found that the document did not indicate the authors' "other credentials," which we determined to be clearly erroneous.

[18] The July 19, 2005 D&O denied Porter's 2002 Claims on the basis that LIRAB did not recognize MCS as a personal injury, as the "opinions of Dr. Morgan, Dr. Jetser, and Dr. Johnson affirm that . . . MCS is still not recognized as an organic illness or disease in the medical community, and that the diagnosis of MCS remains controversial and cannot be proven or confirmed with scientific basis." Moreover, the LIRAB found that Dr. Ewing acknowledged that MCS is "unverified by science and remains controversial and not recognized as an illness or disease in the medical community[.]"

the LIRAB failed to take into account an April 24, 2006 letter by Dr. Ewing stating, in pertinent part, that Porter "has become progressively more chemically sensitive since last seen on February 9, 2006. . . . It is my professional opinion that she is permanently and chronically disabled because of her chemical sensitivity . . . ." Despite Porter's presentation of Dr. Ewing's April 24, 2006 letter, which reports a worsening of her chemical sensitivity symptoms and is dated subsequent to the LIRAB's July 19, 2005 Decision and Order, the record indicates that Porter continues to assert the same alleged injury of MCS or idiopathic environmental intolerance that was addressed in the July 19, 2005 D&O denying her 2002 Claims. Further, Dr. Ewing's letter does not propose that Porter's diagnosis has changed from MCS. Since Porter's 2002 Claims were originally denied on the basis of the LIRAB finding that MCS was not a recognized compensable personal injury and Porter does not claim that her condition has changed from MCS, Porter's allegation of a change in condition that would warrant the granting of relief for her 2002 Claims is without merit. Cf. 13 Larson's Workers' Compensation Law § 131.03(2)(a) (2019) ("Change-of-condition reopening proceeding, the issue before the Board is sharply restricted to the question of extent of improvement or worsening of the injury on which the original award was based. If the original award held that there was no connection between the accident and claimant's permanent disability, there is nothing to reopen, and claimant cannot retry the issue of work-connection through the device of a reopening petition. . . . [N]o matter who brings the reopening proceeding, neither party can raise original issues such as . . . occurrence of a compensable accident, and degree of disability at the time of the first award."). As a result, it was not clearly erroneous for the LIRAB to find that Porter had not alleged that there has been any change in her physical condition since the July 19, 2005 D&O that would warrant the granting of relief for her 2002 Claims. Pilaa 400, LLC, 132

Hawai'i at 263, 320 P.3d at 928; see Waltrip, 140 Hawai'i at 235, 398 P.3d at 824.

Based on its various FOFs pertaining to the various documents and exhibits submitted by the parties, the LIRAB concluded in FOF 85 and COL 1(b) and (c) that Porter was not entitled to relief for her 2002 Claims because there was not substantial evidence of a change or mistake relating to her physical condition. Porter challenges FOF 85 and COL 1 on appeal.

In challenging FOF 85 and COL 1(b), Porter alleges that the LIRAB erred because she had provided substantial evidence of a change[19] relating to her physical condition on the bases that: (1) Dr. Ewing provided his opinion in a letter dated June 17, 2005, that Porter suffers from symptoms due to exposure to chemicals; (2) she has provided post-2005 scientific and peer reviewed publications supporting her position that MCS is a medical disorder; (3) the SSA Notice of Award deemed Porter disabled with MCS; and (4) the September 6, 2006 letter from the former Administrator of the Disability Compensation Division[20] appears to indicate that MCS may be compensable. The June 17,

---

[19]    Insofar as Porter argues that her submission of the four documents, the SSA Notice of Award, and the September 6, 2006 letter from the former Administrator of the Disability Compensation Division, supports her contention that MCS is a recognized medical diagnosis, we conclude that this does not amount to an argument of a change in a determination of fact related to the physical condition of the injured employee. Rather, it is an argument of a mistake in a determination of fact related to Porter's physical condition. 3 Modern Workers Compensation § 309:11 ("Developments in medical science warrant reopening an award on the basis of a mistake of fact.").

[20]    The September 6, 2016 letter expressed that DLIR's database could not identify cases involving MCS and that DLIR was unaware of other states that recognized MCS in their workers' compensation statutes. Further, the letter stated that:

> Any employee may file a [workers' compensation] claim for MCS. If the MCS is determined to be caused by work, the injury would be covered under [workers' compensation], however if MCS is determined not to have been caused by work, the claim would be denied. Automatically covering all MCS claims under [workers' compensation] may have the unintended effect of requiring [workers' compensation] to cover MCS cases not necessarily caused by work.

2005 letter from Dr. Ewing to Frank A. Ury states, *inter alia*, that "[t]here is no question that when [Porter] is exposed to any type of volatile chemicals, she definitely has a physical problem, has respiratory problems, gets fatigued, and does not have a neurological problem." This appears to describe the same or substantially similar symptoms as considered in the July 19, 2005 D&O[21] denying Porter's 2002 Claims. Based on the foregoing and our determination that Porter's arguments of a change in a determination of fact related to her physical condition are actually arguments of a mistake, the LIRAB did not err in finding and concluding that the evidence relied upon by Porter does not constitute substantial evidence of a change in her physical condition entitling her to relief for her 2002 Claims under HRS § 386-89(c). Pilaa 400, LLC, 132 Hawai'i at 263, 320 P.3d at 928; see Waltrip, 140 Hawai'i at 235, 398 P.3d at 824.

Porter argues that the LIRAB erred in COL 1(c), as there is substantial evidence of a mistake in the LIRAB's decision to affirm the DCD's decision to deem her 2002 Claims non-compensable because the LIRAB denied Porter's 2002 Claims based on its lay opinion that MCS was not a valid medical diagnosis, while Porter presented Dr. Ewing's diagnosis of her MCS condition and her medical records, which objectively show that the treating physicians opined that Porter's MCS related symptoms were due to her workplace environment.

FOFs 3-6, which are unchallenged and thus binding on this appeal, Kelly v. 1250 Oceanside Partners, 111 Hawai'i 205, 227, 140 P.3d 985, 1007 (2006), state that, on July 19, 2005, the LIRAB affirmed the DCD's March 19, 2004 Decision to deny Porter's 2002 Claims "[b]ased on the medical opinions presented, [. . .] that the diagnosis of MCS remained controversial and could not be proven or confirmed with scientific basis." Further, based on

---

[21]    The record indicates that the hearing for the July 19, 2005 Decision and Order occurred on June 16, 2005, one day prior to the June 17, 2005 letter being transmitted.

our review of the July 19, 2005 D&O, the LIRAB denied Porter's 2002 Claims on the basis that the LIRAB did not recognize MCS as a personal injury because the "opinions of Dr. Morgan, Dr. Jetser, and Dr. Johnson affirm that . . . MCS is still not recognized as an organic illness or disease in the medical community, and that the diagnosis of MCS remains controversial and cannot be proven or confirmed with scientific basis." Therefore, contrary to Porter's assertion, it does not appear that the LIRAB relied on their own lay opinions in affirming the denial of Porter's 2002 Claims. Additionally, insofar as Porter is asserting that it was a mistake for the LIRAB to weigh the opinions of Dr. Morgan, Dr. Jetser, and Dr. Johnson in its July 19, 2005 D&O more favorably than the opposing diagnosis provided by Dr. Ewing,[22] and Porter's medical records,[23] we decline to address that contention without a discernable argument in support of it, see Kakinami, 127 Hawai'i at 144 n.16, 276 P.3d at 713 n.16, and decline to consider the weight of the evidence or to pass upon the LIRAB's determinations as to credibility of the witnesses or conflicts in testimony. See Igawa, 97 Hawai'i at 410, 38 P.3d at 578; De Victoria, 56 Haw. at 559, 545 P.2d at 698.

Based on the record in this case, it was not wrong for the LIRAB to conclude that Porter had not carried her burden of showing by substantial evidence that a mistake had been made in the determination of her 2002 Claims. Pilaa 400, LLC, 132 Hawai'i at 263, 320 P.3d at 928. The LIRAB, therefore, did not err in denying Porter's request for relief for her 2002 Claims.

---

[22] Porter refers to this document as "Exhibit T" in her Opening Brief. However, there is no Exhibit "T" contained in Porter's Opening Brief. As best as can be determined, it appears that Porter is referring to "Dr. Ewing's initial assessment" dated August 26, 2003, which is attached as Exhibit T in Porter's Post-Trial Memorandum dated September 15, 2015.

[23] Porter refers to this document as "Exhibit H" in her Opening Brief. However, there is no Exhibit "H" contained in Porter's Opening Brief. As best as can be determined, it appears that Porter is referring to "ER records including X-ray and EKG reports" with various dates in 2002 and 2003, which is attached as Exhibit H in Porter's Post-Trial Memorandum dated September 15, 2015.

We note, however, that this case does not decide whether MCS is, in fact, a recognized injury. Rather, the question here was whether Porter made the requisite showing of substantial evidence required by HRS § 386-89(c) to obtain the relief sought.

C. **The LIRAB did not err in declining to address Porter's 2003 Claim and fraud claims as Porter waived those claims in the prior appeal and the issues were outside the scope of remand.**

As to COL 3, Porter contends that the LIRAB erred by concluding that its previous denial of Porter's contentions of fraud was the law of the case and thereby declining to re-address her fraud allegations. COL 3 misstates that Porter's allegations of fraud have been affirmed, but nonetheless comes to the right conclusion.

The record shows that the LIRAB denied Porter's fraud allegations in its September 17, 2013 D&O and in its December 3, 2013 D&O, which Porter appealed to the ICA on December 23, 2013, along with the December 3, 2013 Order that denied Porter's Motion for Reconsideration of the September 17, 2013 D&O. However, in appealing the foregoing to this court, Porter failed to include a fraud argument in her Opening Brief and we deemed that point of error waived pursuant to HRAP Rule 28(b)(7). Porter I, 2015 WL 1400787, at *7 & n.9. Accordingly, this court affirmed the LIRAB's December 3, 2013 D&O to the extent that it affirmed the DCD's denial of Porter's allegations of fraud pertaining to the October 1, 2010 letter. Id. at *8. We also vacated the LIRAB's September 17, 2013 D&O and December 3, 2013 Order, to the extent that they pertained to requests to reopen claims under HRS § 386-89(c), and remanded the issue to the LIRAB for further proceedings. Id. The September 17, 2013 D&O and December 3, 2013 Order were affirmed in all other respects, including the LIRAB's affirmation of the DCD's decision to deny Porter's allegations of fraud relating to incidences alleged to have occurred before March 24, 2009. See id.

Being that we previously deemed Porter to have waived her fraud arguments in a prior appeal in this same action, and no cogent reason for modifying that determination is apparent, Porter may not reopen the issue at this later stage of litigation. See Hussey v. Say, 139 Hawaiʻi 181, 185, 384 P.3d 1282, 1286 (2016) ("The law of the case doctrine holds that 'a determination of a question of law made by an appellate court in the course of an action becomes the law of the case and may not be disputed by a reopening of the question at a later stage of the litigation.'" (citation omitted)); Wong v. City & Cnty. of Honolulu, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983) ("Unless cogent reasons support the second court's action, any modification of a prior ruling of another court of equal and concurrent jurisdiction will be deemed an abuse of discretion." (emphasis omitted)). This court thus declines to address Porter's re-assertion of the fraud allegations. Further, because the scope of remand was specifically limited to the issue of reopening Porter's claims under HRS § 386-89(c) in the September 17, 2013 D&O and December 3, 2013 Order, the LIRAB did not err by declining to re-address Porter's fraud allegations because doing so would have exceeded the scope of remand. See Chun v. Bd. of Trs. of Emps.' Ret. Sys. of State of Hawaiʻi, 106 Hawaiʻi 416, 439, 106 P.3d 339, 362 (2005) (observing "(1) that [i]t is the duty of the trial court, on remand, to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court, and (2) that when acting under an appellate court's mandate, an inferior court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; . . . or intermeddle with it, further than to settle so much as has been remanded" (internal quotation marks and citations omitted)).

We similarly decline to address Porter's contention regarding her 2003 Claim. In COL 2, the LIRAB concluded that the

"claim relating to [Porter's] May 13, 2003 alleged work injury is time-barred" and that the LIRAB "lacks subject matter jurisdiction over the alleged May 13, 2003 work injury." COL 2 is based on the LIRAB's findings that the March 10, 2011 DCD Decision concluded that Porter's 2003 Claim was time-barred pursuant to the five-year statute of limitation of HRS § 386-82 (1993)[24] and that, since Porter had not appealed the DCD's decision, the LIRAB lacked jurisdiction over the issue.

In Porter's previous appeal to this court, we noted:

> As best as can be determined, Porter relied on HRS
> § 386-89(b) (1993) to support reopening her 2003 injury
> claim. HRS § 386-89(b) provides, in relevant part, that
> "[t]he director may at any time, either of the director's
> own motion or upon the application of any party, reopen any
> case on the ground that fraud has been practiced on the
> director or on any party and render such decision as is
> proper under the circumstances."

Porter I, 2015 WL 1400787, at *2 n.5. Thereafter, we concluded that Porter waived her fraud arguments, upon which her request to reopen her 2003 Claim was based, and thus limited our analysis of

---

[24]     HRS § 386-82 provides:

> §386-82 Claim for compensation; limitation of time. The
> right to compensation under this chapter shall be barred
> unless a written claim therefor is made to the director of
> labor and industrial relations[:] (1) within two years after
> the date at which the effects of the injury for which the
> employee is entitled to compensation have become manifest; and
> (2) <u>within five years after the date of the accident or
> occurrence which caused the injury</u>.

> The foregoing limitations of time shall not apply to a
> claim for injury caused by compressed air or due to
> occupational exposure to, or contact with, arsenic, asbestos,
> benzol, beryllium, zirconium, cadmium, chrome, lead, fluorine,
> or other mineral or substance with carcinogenic properties, as
> incorporated in the Hawaii Occupational Safety and Health
> Standards, or to exposure to X-rays, radium, ionizing
> radiation, or radioactive substances, but such claim shall be
> barred unless it is made to the director, in writing, within
> two years after knowledge that the injury was proximately
> caused by, or resulted from the nature of, the employment.
> The claim may be made by the injured employee or the
> employee's dependents or by some other person on the
> employee's or their behalf. The claim shall state in ordinary
> language the time, place, nature, and cause of the injury.

(Emphasis added.)

Porter's request to reopen to her 2002 Claims under HRS § 386-89(c). Porter I, 2015 WL 1400787, at *7 n.9, *8. Accordingly, we decline to address Porter's contention regarding her 2003 Claim because we conclude that Porter had waived that claim in Porter I and remand was limited to the issue of the reopening of her 2002 Claims under HRS § 386-89(c). See Hussey, 139 Hawaiʻi at 185, 384 P.3d at 1286; Wong, 66 Haw. at 396, 665 P.2d at 162; Chun, 106 Hawaiʻi at 439, 106 P.3d at 362.

## V. Conclusion

The LIRAB properly considered whether Porter made the requisite showing of substantial evidence under HRS § 386-89(c) to warrant the granting of relief for her 2002 Claims and did not err in denying Porter's request for relief. To the extent that Porter had waived her fraud claims and 2003 Claim in Porter I, the LIRAB did not err in declining to address those claims on remand. For the foregoing reasons, we affirm the LIRAB's August 10, 2016 D&O.

On the briefs:

Adeline N. Porter,
Claimant-Appellant,
Self-Represented.

Scott G. Leong,
and Shawn L.M. Benton,
(Leong Kunihiro Benton
& Brooke),
for Employer-Appellee,
Self-Insured.